Manuel MALDONADO–MALDONADO,
Plaintiff,

v.

PANTASIA MANUFACTURING
CORPORATION,
Defendant.

Civil No. 92–1609 (DRD).

United States District Court,
D. Puerto Rico.

Jan. 7, 1997.

4. Defendants Catherine B. Shaughnessy and Edward R. Quinn have asserted counterclaims against the plaintiff.

Enrique J. Mendoza–Mendez, Mendoza & Baco, San Juan, PR, for plaintiff.

Graciela J. Belaval–Bruno, Martinez, Odell & Calabria, Hato Rey, PR, for defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

On May 6, 1992, plaintiff Manuel Maldonado Maldonado filed a civil action against his former employer, Pantasia Manufacturing Corp., for alleged violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), § 2 *et seq.*, as amended, 29 U.S.C. § 621 *et seq.* Pending before the Court in this suit is Pantasia's motion for summary judgment (Docket No. 15), based on two arguments: first, that Mr. Maldonado has failed to establish a *prima facie* case of age discrimination; and second, that even if he has established a *prima facie* case, he has failed to rebut the defendant's articulation of legitimate, non-discriminatory reasons for its decision to terminate his employment. Maldonado disputes both arguments.

The Court referred this motion to U.S. Magistrate Judge Justo Arenas for a report and recommendation (Docket No. 25). Magistrate Judge Arenas recommends that the motion for summary judgment be granted (Docket No. 26). Maldonado has filed an objection to this recommendation (Docket No. 27), in which he argues that there exist genuine issues of material fact, regarding both his *prima facie* case and his claims of pretext, that prevent the entry of summary judgment. As will be further discussed below, upon reviewing de novo those portions of the Magistrate Judge's Report and Recommendation that the plaintiff objected to, the Court decides to deny the motion for summary judgment.

## I. Standard of Review for Objections to Magistrate Recommendations

Because U.S. Magistrate Judges are Article I judges, they may not issue binding judgments unless the parties have consented to it. 28 U.S.C. § 636(c)(1). Nevertheless, even without the parties' consent, a district court may refer the resolution of pending motions to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

 Of course, the plaintiff may contest the Magistrate's report and recommendation. Specifically, 28 U.S.C. § 636(b)(1) (1993) provides that:

"[w]ithin ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." (emphasis added).

This statutory provision is echoed by Fed. R.Civ.P. 72(b) and Local Rule 510.2. In sum, a district court must make an independent examination of those findings or recommendations made by the Magistrate Judge that a party has objected in writing to.

Conversely, any matters not objected to are deemed admitted. Local Rule 510.2(A) states that "[a]ny objections to the Magistrate Judge's proposed findings, recommendation, or report must be filed with the Clerk of the Court within ten (10) days after being served with [a] copy thereof. *Failure to file objections within the specified time waives the right to appeal the District Court's order*" (emphasis added). Rules such as this one have been approved by the U.S. Supreme Court. For example, in *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1980), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986), the Court wrote that:

"[w]e hold that a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's report and recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired."

Pursuant to this rule, "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992).

Given that plaintiff Manuel Maldonado–Maldonado has objected in detail to the Magistrate's recommendation, the Court must review *de novo* the entire controversy regarding the motion for summary judgment.

## II. Standard for Summary Judgment

Summary judgment shall be granted where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue is genuine if it 'must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.'" *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)). All reasonable inferences from the evidence must therefore be made in favor of the nonmoving party. *LeBlanc v. Great American Insurance,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). "An inference is reasonable only if it can be drawn from the evidence without resort to speculation." *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir.1996) (citing *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991)). Similarly, "[i]n this context, 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir.1992). Thus, at this stage of the proceedings, "the issue before [the Court] is not whether [the plaintiff] was in fact fired because of his age, which remains to be determined at trial, but whether the question, whether he was fired because of his age, is genuinely contestable." *Shager v. Upjohn Co.,* 913 F.2d 398, 403 (7th Cir.1990).

### III. Summary Judgment and the *McDonnell Douglas* Burden-shifting Framework

■ "In assessing claims of age discrimination brought under the ADEA" in the context of resolving a motion for summary judgment, this Court applies "some variant of the basic evidentiary framework set forth in *McDonnell Douglas.*" *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because the Supreme Court has "never had the occasion to decide whether that application of the Title VII rule to the ADEA context is correct," *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310, the Court is guided

in the interim by the First Circuit Court of Appeals, which has consistently applied the *McDonnell Douglas* burden-shifting framework to ADEA cases. *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996); *Pagés–Cahue v. Iberia Lineas Aereas de Espana,* 82 F.3d 533, 536 (1st Cir.1996); *Olivera v. Nestlé Puerto Rico, Inc.,* 922 F.2d 43, 46–50 (1st Cir.1990); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014–16 (1st Cir.1979).

■ In order to survive a motion for summary judgment, the *McDonnell Douglas* framework requires the plaintiff to first "make a *prima facie* showing (1) that he or she fell within the ADEA's protected age group—that is, more than forty years of age; (2) that he or she met [the defendant employer's] legitimate performance expectations; (3) that he or she experienced adverse employment action; and (4) that [the defendant employer] did not treat age neutrally or retained younger persons in the same position." *Pagés–Cahue v. Iberia Lineas Aereas de Espana,* 82 F.3d at 536 (emphasis added). "As the very name 'prima facie case' suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.'" *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310 (citations omitted). Thus, for example, "in an age-discrimination context, [an inference that an employment decision was based on an illegal discriminatory criterion] can not be drawn from the replacement of one worker with another worker insignificantly younger." *Id.*

■ By establishing a prima facie case of age discrimination, the plaintiff creates a rebuttable presumption that the employer discriminated on the basis of age. "However, to rebut this presumption, the employer need only 'articulate a legitimate nondiscriminatory reason for the employee's termination.'" *Pagés–Cahue,* 82 F.3d at 536. Once the employer has articulated such a reason for the termination, the "*McDonnell Douglas* presumption drops out of the picture." *Id.* (citations omitted). In other words, the presumption merely shifts the

burden of production, not the burden of proof.

If the defendant meets its burden of production, "the plaintiff, 'before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age.' ... Direct or indirect evidence of discriminatory intent may suffice, but 'the evidence as a whole ... must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.'" *Id.* (citations omitted).

■ One way in which a plaintiff may provide indirect evidence of discriminatory animus is by making two logically independent but factually related showings: first, that the 'legitimate nondiscriminatory reason for termination' articulated by the employer was merely pretextual, and second, that the pretextual reason was likely a cover for a discriminatory reason. *See Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d at 673. However, the second showing need not be made with new evidence; instead,

> [t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may,* together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and ... upon such rejection, 'no additional proof of discrimination is required.'

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (emphasis added). At the summary judgment stage, then, the plaintiff opposing summary judgment on the ADEA claims normally need only provide competent evidence as to the elements of his prima facie case as well as of his claim that the defendant's proffered reasons were pretextual. If the plaintiff so provides, he shall have created a genuine issue of material fact insofar as a reasonable jury *could* find that the very fact that the defendant provided a pretextual reason for the plaintiff's discharge, together with the facts establishing the plaintiff's prima facie case, were sufficient to convince them that the real reasons for the employment actions were discriminatory.

## IV. Analysis

### A. *Prima facie* case

Defendant agrees that Maldonado has met two of the four requirements for establishing his prima facie case of age discrimination; namely, "that he ... fell within the ADEA's protected age group—that is, more than forty years of age" because he was fifty-nine years old when he was discharged, and "that he or she experienced adverse employment action" by being discharged.[1] However, Pantasia argues that Maldonado has not established that he met Pantasia's legitimate performance expectations nor that Pantasia failed to treat age neutrally or retained younger persons in the same position. Maldonado, in turn, argues that he "was qualified and was performing well" at his job, and that "upon his termination [he] was substituted by a younger employee." *Plaintiff's Motion in Opposition* at 13, 18. The Court finds that Maldonado has at least created genuine issues of fact as to whether he was qualified or not, and as to whether he was substituted by a younger employee or not.

■ Regarding his qualifications, Pantasia has submitted affidavits stating that Mr. Maldonado's inadequacy of performance became evident in the mid to late eighties. However, it is undisputed that at the time of his discharge in 1991, Maldonado had worked for Pantasia for close to twenty years. During that entire period, there are no company memoranda or other internal files indicating any sort of official displeasure with Maldonado's performance. To the contrary, when

---

1. An issue noted by the Court but not now resolved is whether Pantasia's actions *may* be understood to constitute two separate adverse employment actions: first the demotion from manager to cutting room supervisor, and then the discharge. In other words, the question is whether the demotion should be considered to be (1) an independently-actionable "adverse employment action," (2) a unsuccessful attempt to constructively discharge the plaintiff, followed by the actual discharge, or (3) not an adverse action at all.

Mr. Irwin Greenwald, one of the owners of Pantasia, retired from active management of the company in early 1987, he sent Maldonado a letter in which he stated that:

It is not very often in a lifetime that one can have been as privileged as myself to have been associated with a man such as yourself. Your total thoughtful dedication and industry relieved me of so many burdens and instilled in me the complete confidence that production wise [sic] there was nothing that our company could not do. You were never negative. This quality gave me the encouragement and stimulation to feel it would not be for lack of trying that we would fail. I appreciate the wonderful team that you joined together.

Exhibit 9, Plaintiff's *Statement of Contested Facts,* Docket No. 18. In a similar vein, Mr. Saul Gold, one of Pantasia's executives, wrote on December 14, 1988, that:

It was a great pleasure & delite [sic] being here in Pantasia & working with you. You are indeed one of the most professional & knowledgeable individual [sic] I have met in my working career. Your knowledge & understanding of the product manufactured is limitless. Each day I have been here I have learned something new & I look forward to working with you in the future.

Exhibit 8, Plaintiff's *Statement of Contested Facts,* Docket No. 18. Finally, on January 13, 1989, Mr. Maldonado received a commemorative plaque that read as follows:

Manuel M. Maldonado
 January 13, 1989 .
 On the 20th Anniversary of Pantasia
 It is through your leadership,
 foresight and compassion,
 that we have achieved this success.
 Our deepest appreciation.
 The Pantasia Organization

Exhibit 8, Plaintiff's *Statement of Contested Facts,* Docket No. 18. Therefore, although

Pantasia claims that by the mid-eighties, Maldonado was not performing adequately, Maldonado has provided evidence that, during that same period of time, the company complimented him for his performance on at least three separate occasions. The evidence provided by Maldonado is sufficient to create a genuine issue as to whether Pantasia considered Mr. Maldonado to be performing his job adequately during the period preceding his discharge.[2]

■ The Court arrives at a parallel conclusion regarding the issue of whether or not Pantasia replaced Maldonado with a younger· employee or otherwise failed to treat age neutrally. On the one hand, Mr. Maldonado claims that he was replaced as cutting room supervisor by Mr. Quiterio Cruz, who "is significantly younger than the plaintiff." Maldonado further claims, and supports with a number of affidavits provided by other employees, that Mr. José Torres, who had taken over the day-to-day operations at the manufacturing plant, made a number of comments indicative of age-based animus. On the other hand, Pantasia states that Mr. Maldonado was replaced by a group of people, not an individual, and that several of those were either insignificantly younger than the plaintiff, or, in one case, three years older.

Maldonado has certainly created a genuine issue of fact as to whether he was replaced as cutting room supervisor by a substantially younger individual; namely, Mr. Quiterio Cruz. Obviously, Maldonado would have a much harder, if not impossible, time trying to establish a prima facie case of age discrimination with regard to his demotion from manager to cutting room supervisor *by showing that he was replaced by a substantially younger individual,* given that some of the people who took over his responsibilities as manager were very close to him in age. However, as the discussion above at Part III indicated, the fourth requirement for establishing a prima facie case of age discrimina-

---

**2.** In a vain attempt to forestall this conclusion, Mr. Saul Gold stated in his affidavit that the remarks he made in the December 14, 1988, letter to Maldonado were not true. Exhibit 3, Defendant's *Statement of Uncontested Facts,* Docket No. 15. Unfortunately, the question of which of his statements regarding Mr. Maldona-

do's performance is true and which is false cannot be answered at the summary judgment stage because any answer requires a credibility determination. *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091

(1st Cir.1995).

tion may be satisfied by "mak[ing] a prima facie showing," "that [the defendant employer] . . . retained younger presons in the same position," *or "that [the defendant employer] did not treat age neutrally."* *Pagés–Cahue,* 82 F.3d at 536 (emphasis added). The affidavits provided by Maldonado documenting Mr. Torres' statements regarding age may reasonably be interpreted by a jury to indicate that Pantasia did not treat age neutrally.

The Court therefore concludes that the question whether Mr. Maldonado has established all four elements of a *prima facie* case of age discrimination is genuinely controverted and should proceed to be heard before a jury.

## B. Articulation of legitimate, nondiscriminatory reason for the discharge

Anticipating the possibility that the Court might find that Maldonado had stated a *prima facie* case of age discrimination, Pantasia has articulated a legitimate, nondiscriminatory reason for his discharge. To summarize, Pantasia claims that as its operations expanded, it became necessary to implement new management and production strategies, but that Mr. Maldonado failed to respond to these new circumstances. Therefore, according to Pantasia, it became necessary to bring in a new management team to replace Mr. Maldonado and modernize Pantasia's operations. Pantasia stresses the fact that two of the new managers were very close in age to Mr. Maldonado. Mr. Maldonado was demoted to cutting room supervisor but was fired a year later after allegedly continuing to fail to update his management style and strategy.

## C. Indirect evidence of discrimination: Showing of pretext

█ Mr. Maldonado has successfully created a genuine issue of fact as to whether Pantasia's stated reasons for his discharge were pretextual. First, he has provided a copy of a note that Mr. Saul Gold allegedly wrote in 1988 praising Maldonado's managerial skills. This letter is not easily reconciled with Mr. Gold's affidavit statement that what he had written in that note was not true. Admittedly, in his affidavit, Mr. Gold tried to minimize the importance of this note by claiming that he had written it at the behest of one of the company's executives in order to assuage Mr. Maldonado's worries. The Court is not now making credibility determinations, but merely indicating that a reasonable jury could find Mr. Gold's statements regarding the reasons for Mr. Maldonado's discharge to be less credible because of these inconsistencies in his earlier statements and actions.

Second, Mr. Maldonado has furnished the Court with a number of affidavits sworn by present and former Pantasia employees which uniformly indicate that Mr. José Torres stated on various occasions that he was planning to "get rid of the older employees to create a new team consonant with his ways." Although it is by no means a foregone conclusion, to judge from the text of the affidavit, that Mr. Torres was referring to age and not to seniority, it would be permissible for a reasonable jury to so find.

Third, Mr. Maldonado has provided evidence that could establish that Pantasia provided to different government agencies inconsistent explanations for Mr. Maldonado's discharge. In a form filed with the Puerto Rico Department of Labor and Human Resources, Pantasia indicated that the reason for Mr. Maldonado's discharge was that his position had been eliminated. In contrast, in a letter sent to the Unemployment Office of the Municipality of Manatí, Puerto Rico, Pantasia wrote that Mr. Maldonado was discharged because of his poor performance. Again, while this is not evidence that must necessarily be seen as inconsistent, a reasonable jury could find that Pantasia was changing its explanation from agency to agency.

Finally, Mr. Maldonado has also provided evidence tending to show that his discharge resulted directly from his failure to agree to Pantasia's offer of an early retirement package. Once more, although Mr. Marvin Greewald's statement that "[y]our failure to accept our offer . . . puts us in a difficult situation. We are forced now to immediately terminate your employment with this company" need not be taken as proof that age animus was involved, it would be permissible for a reasonable jury to so construe it.

In sum, as discussed above at Part III, given that Pantasia has articulated a legitimate nondiscriminatory reason for Maldonado's discharge, he was required to "show evidence sufficient for the factfinder reasonably to conclude that [Pantasia's] decision to discharge him or her was wrongfully based on age" in order to "becom[e] entitled to bring the case before the trier of fact." *Pagés–Cahue,* 82 F.3d at 536. Indirect evidence of discriminatory intent, such as a showing that the proffered reasons for the discharge were pretextual, may suffice. *Id.* In the case at hand, the challenges to Mr. Gold's credibility, Mr. Torres' statements regarding older workers, the allegedly changing explanations for Mr. Maldonado's dismissal, and the letter discharging Mr. Maldonado together suffice to *permit* a reasonable jury to find that Pantasia's stated reasons for discharging Maldonado were pretextual.

Furthermore, Mr. Maldonado has created a genuine issue as to whether the pretextual reasons were intended to cover for a discriminatory reason. A jury that found that Maldonado had established a *prima facie* case of age discrimination and that the defendant's stated reasons for his discharge were pretextual, could *also* reasonably conclude that the very fact that the defendant provided pretextual reasons, together with the *prima facie* case, was indirect evidence indicating that Pantasia had discriminated on the basis of age. *See St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. at 2749 ("Thus, rejection of the defendant's proferred reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, no additional proof of discrimination is required.")

### D. Direct evidence of age discrimination

In any case, even if Mr. Maldonado's claim had not survived the application of the *McDonnell Douglas* framework, this Court would nevertheless have denied the motion to dismiss. As the First Circuit has noted, "[t]he *McDonnell Douglas* framework, however, only comes into play where there is no direct evidence of discrimination. In cases involving direct evidence of discriminatory

motive, the burden of persuasion shifts from the employee to the employer, who must then affirmatively prove that it would have made the same decision even if it had not taken the protected characteristic into account." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996). Direct evidence "is evidence which, in and of itself, shows a discriminatory animus," *Jackson v. Harvard Univ.,* 900 F.2d 464, 467 (1st Cir.1990), although it is not always clear what constitutes direct evidence. *Ayala–Gerena,* 95 F.3d at 96.

In the instant case, Mr. Maldonado has produced direct evidence of discrimination which is for the jury to credit or repudiate. The evidence in question is the sworn statements of various employees attributing to Mr. Torres statements to the effect that the company was planning to "get rid of the older employees to create a new team." Although the First Circuit has not yet clearly defined what constitutes direct evidence of age discrimination, *Ayala–Gerena,* 95 F.3d at 96, surely the remarks quoted above must qualify.

The burden then shifts to Pantasia to "affirmatively prove that it could have made the same decision even if it had not taken the protected characteristic [age, in this case] into account." *Ayala–Gerena,* 95 F.3d at 95–96. However, since at the summary judgment stage the Court is precluded from making credibility findings, *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir. 1995), the Court cannot take as uncontroverted fact Pantasia's assertion that Maldonado would have been discharged for lack of performance regardless of his age.

### V. Conclusion

Upon review of both parties' submissions, the Court finds that Mr. Maldonado has provided evidence which would permit a reasonable jury to conclude that he has established a *prima facie* case of age discrimination, that Pantasia's stated reasons for his dismissal are pretextual, and that the true reason for his dismissal was age-based animus. The

motion for summary judgment therefore must be, and is, **denied.**

IT IS SO ORDERED.