Oscar **PEREZ ORTIZ**, et al., Plaintiffs

v.

**SUPERMERCADOS AMIGO, INC.**, et al., Defendants.

Civil No. 96–1028 (PG).

United States District Court, D. Puerto Rico.

May 19, 1997.

Maria Bobonis Zequeira, San Juan, PR, for plaintiffs.

Godwin Aldarondo Girald, Hato Rey, PR, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### I. Introduction

Plaintiffs Oscar Pérez Ortiz, his wife, and the conjugal partnership they comprise (hereinafter referred to indistinctively as "Pérez") brought suit against Pérez's former employer, Supermercados Amigo, Inc. (Amigo Supermarkets, hereinafter "Amigo"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (1994).[1] Plaintiffs have also invoked the supplemental jurisdiction of this Court to hear claims under Puerto Rico's Law 100, P.R. Laws Ann. tit. 29 § 146 (1995) (employment discrimination statute), Law 80, P.R. Laws Ann. tit. 29 §§ 185a–m (1995) (wrongful discharge statute), and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990) (general tort statute). Defendant moves for summary judgment on the grounds that: 1) Pérez did not meet Amigo's legitimate performance expectations, and 2) Pérez was fired for legitimate, nondiscriminatory reasons.

### II. The Legal Standards

#### A. Burdens of Proof Under the ADEA

■ There are two methods of establishing a case of age discrimination. First, a plaintiff may offer direct evidence of discrimination, a "smoking gun." Upon doing so, the burden shifts to the defendant-employer to prove that it would have made the same decision had it not taken the protected char-

acteristic into account. *Maldonado–Maldonado v. Pantasia Mfg. Corp.*, 956 F.Supp. 73, 80 (D.P.R.1997) (quoting *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996)).

Absent direct evidence of discrimination, a plaintiff may proceed through the burden-shifting framework first established under Title VII in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996). The burden of "persuasion," of course, rests at all times with the plaintiff; the defendant bears no more than a burden of "production" at any time. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1092 (1st Cir.1995).

First, a plaintiff must offer evidence with respect to the parts of the so-called "prima facie" case demonstrating that an adverse employment decision was the result of unlawful discrimination. *Mulero–Rodriguez*, 98 F.3d at 673. To make out a prima facie case under the ADEA, a plaintiff must show that he (1) was a member of a protected class, (2) met the employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was replaced by someone with similar skills and qualifications. *Id.*; *Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 536 (1st Cir.1996); *Woodman*, 51 F.3d at 1091. The plaintiff's burden at this stage is light; if satisfied, a presumption arises that the employer engaged in unlawful employment discrimination. *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 26 (1st Cir.1995).

The defendant must respond merely by articulating a "legitimate, non-discriminatory reason" for the adverse action taken against the employee. *Mulero–Rodriguez*, 98 F.3d at 673. If the defendant satisfactorily shoulders this burden, the presumption of unlawful discrimination vanishes, and the plaintiff again must take the stage. *Pages–Cahue*, 82 F.3d at 536.

---

1. Plaintiffs also invoke the Court's jurisdiction under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to e–17. The first cause of action in the complaint, however, although entitled "ADEA and Other Federal Laws," discusses only the ADEA, the prayer for relief makes reference only to the ADEA and Puerto Rico law, and neither FLSA nor Title VII provides a cause of action for age discrimination.

The plaintiff finally must offer evidence that demonstrates that the defendant's proffered justification for the adverse action is a pretext to mask an unlawful, age-based animus. *Mulero–Rodriguez*, 98 F.3d at 673. The evidence must permit a factfinder reasonably to conclude that unlawful discriminatory animus was a determinative motivation for the employer's actions. *Id.*

### B. Summary Judgment

The Court also notes briefly the well-rehearsed standard for summary judgment, which permits no credibility assessments, *Woodman*, 51 F.3d at 1091, requiring, instead, that the evidence be viewed in the light most favorable to the nonmovant and that all reasonable inferences be drawn in his favor. *Id.* Thus viewed, the evidence need only raise a genuine issue of material fact, Fed.R.Civ.P. 56(c); that is, the nonmovant must adduce evidence sufficient to allow a factfinder reasonably to find in his favor. *Mulero–Rodriguez*, 98 F.3d at 673.

> "The moving party bears the initial burden of averring an absence of evidence to support the nonmoving party's case.... That burden having been met, the nonmoving party may not rest on mere allegations or denials of his/her pleading, but must set forth *specific facts* showing that there is a genuine issue for trial.... In so doing, the nonmovant must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment...."

*Lawrence v. Northrop Corp.*, 980 F.2d 66, 68 (1st Cir.1992) (emphasis supplied). "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (quoting *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511). "[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id.*

## III. Discussion

### A. Direct Evidence

Pérez asserts that the burden-shifting *McDonnell Douglas* framework "almost seems irrelevant" in this case, (Plf. Mem. Law at 6 [2]), because he has direct evidence of discrimination. His evidence consists of his own sworn statement claiming that 1) Mr. Francisco Carrasquillo, store manager at the Caguas store, said he was old and should retire, 2) Mr. Santos, the grocery manager, was "always" pointing out, inaccurately, that Pérez could no longer handle the jack equipment used to unload pallets, 3) younger employees would follow their superiors' example and make discriminatory comments regarding Pérez's age, and 4) Amigo carried out a "campaign" of discrimination against him.

This is at best a stray remark or two coupled with vague, conclusory accusations of discrimination by unidentified younger employees making comments of unspecified content on indefinite occasions. "[W]e do know that, at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Ayala–Gerena*, 95 F.3d at 96. There is no evidence that any of the remarks were made by decisionmakers [3] or that they were made in the decisional process itself. Pérez has thus not provided direct evidence of discrimination, and the burden does not shift to Amigo to prove that it would have made the same decision regardless of Pérez's age.

---

**2.** By the Court's count, as there are no numbers on the pages.

**3.** By Pérez's own account, the person with authority to fire him was the head of Personnel, Mr. William Cuebas. (Plf. Dep. at 27.) The two individuals who met with Pérez to inform him he was being discharged were Mr. Cuebas and Mr. Samuel Rodriguez, the Caguas area District Manager.

## B. The Prima Facie Case

There is no dispute that Pérez fulfills the first and third elements of the prima facie case. He is a member of the protected class by virtue of being over 40 years of age and he suffered an adverse employment action by being discharged. Amigo argues, however, that Pérez fails to make out a prima facie case because he did not meet Amigo's legitimate performance expectations.

### 1. Replacement

■ The Court notes initially that the fourth element of the prima facie case—replacement by a younger person with similar skills and qualifications—has been all but ignored by the parties. While Plaintiffs claim in their opposition that Pérez was replaced by a much younger person, there is no evidence in the record as to who, if anyone, replaced him, or what that person's age, skills, and qualifications may be. The Court could grant summary judgment for Amigo on this basis alone; however, Amigo's asserted grounds for summary judgment have merit and the Court will address them as well.

### 2. Legitimate Performance Expectations

■ Amigo argues that Pérez was not performing at an acceptable level because of conduct, ranging from insubordination to neglect of his duties, that had resulted in disciplinary actions, including verbal and written warnings and suspensions. Amigo cites a long list of incidents in support of its argument: 1) In April, 1992, Pérez was disciplined for failing to inspect a supplier's delivery and reporting as "received" ten boxes of aluminum foil packages that never appeared at the store; 2) On August 10, 1992, he behaved disrespectfully toward Ms. Sonylma Rivera, an assistant manager; 3) On September 16, 1992, Mr. Ivan Cruz, an internal auditor, saw him eating a fruit he had not paid for. When the auditor reminded him that this violated company rules, he behaved disrespectfully, daring the auditor to fire him if he had the guts; 4) On September 23, 1992, he again behaved disrespectfully to-

ward Ms. Rivera and insulted the store managers generally when she refused his request to be paid for the two days he was suspended because she had to consult with the Central Office; 5) On November 11, 1993, he refused to weigh a delivery of turkeys, making the carrier weigh it himself. He claimed that Mr. René Martínez, the meat manager, had weighed them and, upon being contradicted by Martínez, became hostile toward Ms. Vanessa Díaz, the internal auditor who was investigating the matter; 6) On April 5, 1994, he lost the keys to the receiving area, making necessary the replacement of all the supermarket door locks; 7) On August 5, 1994, he left work at midday without authorization and despite being warned not to do so; 8) On March 17, 1995, an employee of Seven–Up's Distribution Department stored a bag of bakery goods from Amigo in Pérez's vehicle; 9) On March 21, 1995, Mr. José Collazo, a merchandiser at Colomer & Suárez, Inc., placed two boxes labeled "N.T. Gargiolo" containing credits [4] in Pérez's vehicle at Pérez's request. It was not the first time Pérez had requested products nor the first time Collazo had given them to Pérez; 10) On the same day, Pérez accepted a box of snacks from Mr. César Nazario, a merchandiser from Keebler Co. and asked him to place the box in Pérez's vehicle; 11) On March 17 and 21, 1995, Mr. Cuebas, Mr. Cruz, and Mr. Rodríguez observed merchandise being unloaded from Perez's vehicle into a WIC Center nearby the store where Pérez worked; and 12) On those same dates, Mr. Héctor Montalvo, a private investigator, videotaped merchandisers placing packages into Pérez's vehicle, Pérez going into the WIC Center, and merchandise being unloaded from Perez's vehicle to another vehicle and into a WIC Center.

In response, Pérez argues, first, that there is a genuine issue as to whether he met Amigo's legitimate performance expectations because his employment evaluations show that Amigo was satisfied with his work and "nothing in them indicates official displeasure with his performance." (Def. Mem. Law at 9.) He proffers his employment evaluations

---

4. Credits are expired or damaged goods returned to suppliers for reimbursement.

dating back to 1984 to support his position[5] and apparently relies on *Maldonado–Maldonado* for the proposition that evidence that an employer has complimented an employee on his performance is sufficient to create a genuine issue as to whether the employer considered that the employee was performing his job adequately during the period preceding his discharge.[6]

In *Maldonado–Maldonado*, however, in addition to letters praising the plaintiff's work, there were "no company memoranda or other internal files indicating any sort of official displeasure with Maldonado's performance." *Maldonado–Maldonado*, 956 F.Supp. at 77. That is not the case here. On the contrary—it is patently false that nothing in Pérez's evaluations indicates official displeasure with his performance. Most of the incidents Amigo recounts (through 1994) are documented not only in the very annual evaluations Pérez offers as exhibits, although these are otherwise positive, but also in separate disciplinary notices signed by him.[7] (*See* Plf.'s Exs. 20, 22, 23; Def.'s Ex. 2 (Exs. to Pérez Dep.))[8] So far as the evaluations are concerned, the undisputed facts show that they express official displeasure with Pérez's performance.

Pérez also disputes, however, the circumstances of certain of the incidents. With regard to the turkey incident, he asserts that his instructions were that merchandise that came from the warehouse did not have to be weighed. He does not deny, however, that the distribution sheet in this particular instance directed that the turkeys be weighed at the store, nor does he deny Amigo's description of his conduct during the subsequent investigation. As to the fruit incident, he says that he was later paid for the three days he was suspended because he had not violated any rule. Although he does not say so in his opposition, in his deposition he claims that he was checking the quality of the fruit, which he says was his responsibility when the grocery manager was not present. He does not deny that he dared Mr. Cruz to fire him if he had the guts. He does not deny the aluminum foil gaffe, but explains how it happened and asserts that it is a mistake that happens once in a while and that he was never before reprimanded for it. The explanation in his deposition and in the disciplinary notice do not quite match, however. In the former he says he did not have time to check the container van completely, whereas in the latter he said he confused the packs of plastic covering with those of the aluminum foil. He denies ever having told Ms. Rivera that Amigo had money to pay overtime or that she lacked "human relations," but he does not deny the other remarks attributed to him. Moreover, in his deposition, to which he points for support, he did not deny saying she had a long way to go in human relations; rather, he said it was possible he had said that, but he did not remember. (Pérez Dep. at 22.) He does not deny the second incident with Ms. Rivera. He denies having lost the keys to the receiving area, saying, instead, that the keys were on the receiving counter and when he went to get them they were gone.[9] He claims that this did not affect the store's operations because the store manager had another key, and that the only lock that had to be changed was the lock to the receiving door. Pérez also asserts that his absence on August 5, 1994, had been authorized and that he was later paid for the days he was suspended because Amigo had erred in suspending him.

---

5. Most of these are irrelevant because Amigo does not assert any complaints regarding Pérez's work prior to 1992.

6. Plaintiff does not actually cite this case or any other for this proposition, but the description of this holding and the amount of language that is lifted directly from the opinion both here and elsewhere in his memorandum make evident that this is the case from which it is drawn.

7. With the exception of the one regarding the aluminum foil incident, which he refused to sign on the grounds that anyone can make a mistake and that he had confused the packs of plastic covering with those of the aluminum foil.

8. The only confusing aspect is that the evaluation for the period from December 1991 to December 1992 does not mention the incidents that took place during 1992; instead, these are mentioned in the evaluation for 1992–93.

9. Whether or not this is precisely "losing" the keys, the fact remains that he was responsible for the keys that turned up missing.

He says that he never requested that an employee of Seven–Up store a bag containing bakery products from Amigo in his vehicle, that the merchandise from Colomer & Suárez was not the property of Amigo, and that the box of snack pizzas given to him by Nazario was not from Amigo and was offered after Pérez had finished his work for the day. He does not deny that the bag of bakery products was in fact placed in his vehicle, however, and he does not assert that he returned it. He also does not deny receiving the box of snacks or the boxes of credits. Whether these belonged to Amigo is irrelevant, as is his assertion that he received the box of snacks after working hours. The rule against gifts makes no exceptions for either of these circumstances. Pérez also does not deny his trips to the WIC Center and the transfers of merchandise into the WIC Center and into another vehicle. Finally, Pérez makes the blanket statements that Amigo had to pay him for the disciplinary actions taken against him (he does not specify which) and that he never violated any company rules. Such conclusory blanket statements do not constitute specific facts supported by affirmative evidence sufficient to create an issue of fact as to the matters he has not denied or has failed to support with evidence.

While Pérez's averments may create certain issues of fact, they leave sufficient undisputed facts to justify Amigo's conclusion that Pérez was not performing up to its legitimate expectations. Accordingly, summary judgment for Amigo is appropriate on the second element of the prima facie case.

*C. The Legitimate, Non–Discriminatory Reasons*

█ Even if the Court were to conclude that Pérez was performing to Amigo's legitimate expectations because he performed his work adequately even though he engaged in improper conduct, or that there is a disputed issue of fact on that point, Amigo has articulated legitimate, non-discriminatory reasons for dismissing Pérez. It is then Pérez's burden to provide sufficient evidence to allow a factfinder reasonably to conclude that the reasons proffered for his dismissal are pretextual and are intended to disguise an unlawful, age-based animus. Pérez has not met this burden. His evidence on this point is the same as his direct evidence, already discussed and rejected.[10]

*D. The Puerto Rico Law Claims*

█ The assertion of supplemental jurisdiction over state law claims is within the court's discretion. "The district courts may decline to exercise supplemental jurisdiction ... if ... the district has dismissed all claims over which it had original jurisdiction...." 28 U.S.C. § 1367(c)(3) (1994). The unfavorable disposition of a plaintiff's federal claims prior to trial ordinarily results in the dismissal, without prejudice, of any supplemental claims based on state law. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Hernandez v. Wangen,* 938 F.Supp. 1052, 1065 (D.P.R.1996). As the federal claims have been dismissed in this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico law claims.

**IV. Conclusion**

For the foregoing reasons, Defendant Supermercados Amigo, Inc.'s, Motion for Summary Judgment **(Dkt.# 14)** is hereby **GRANTED.**

**IT IS SO ORDERED.**

---

**10.** The Court pauses to note Amigo's argument that age could not have been a motivating factor in Pérez's dismissal because he was 48—already in the protected age group—when he was hired. Although there may be cases in which a plaintiff's age at hiring may render it unlikely that age was a motivating factor behind his or her discharge, *see Menard v. First Security Svcs. Corp.,* 848 F.2d 281, 289 n. 4 (1st Cir.1988), the Court cautions that this will not always necessarily be the case, especially where, as here, the plaintiff is substantially older at firing than at hiring. This is similar to the argument that age could not have been a motivating factor in dismissing a person who was replaced by someone who was also a member of the protected age group. That argument was rejected by the Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.,* ——— U.S. ———, ———, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).