Rodolfo VIDAL–SOTO; Nylsa Franqui–Olivera, and their Conjugal Partnership, Plaintiffs,

v.

BANCO BILBAO VIZCAYA–PUERTO RICO; Insurance Company "A", Defendants.

No. Civ. 96–2290 (JAF).

United States District Court, D. Puerto Rico.

April 24, 1998.

Maria Bobonis–Zequeira, Woods & Woods, San Juan, PR, for Plaintiffs.

Arturo Bauermeister, Pedro Manzano–Yates, Fiddler Gonzalez & Rodriguez, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Rodolfo Vidal–Soto, his wife, Nylsa Franqui–Olivera, and their conjugal partnership, bring this action against Defendants, Banco Bilbao Vizcaya–Puerto Rico (BBV–PR) and Insurance Company A, pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and Puerto Rico's Law 100, 29 L.P.R.A. § 146

(1995), and Law 80, 29 L.P.R.A. §§ 185a–m (1995).

## I.

### *Facts*

Plaintiff was born in Chile on August 4, 1953. Defendant, BBV–PR, is a bank corporation organized and operating under the laws of Puerto Rico. BBV–PR is the majority-owned subsidiary of Banco Bilbao Vizcaya, S.A., a Spanish bank (BBV–Spain).

In July 1993, after Plaintiff interviewed with the Executive Vice President of the Bank, Antonio Pavía, and the Executive Vice President of Commercial Banking of BBV–PR, José Luis Castellanos, the President of the Bank, Juan Antonio Net, offered him a position as head of the International Department. The three functions of the International Department involve letters of credit, collections, and wire transfers. Plaintiff began to work for BBV–PR on August 2, 1993, reporting directly to Castellanos from August 1993 to the first quarter of 1994, and then to Pavía thereafter. Plaintiff's goals were to modernize and develop the department so that it would produce income.

In October 1993, a multimillion dollar client of the BBV–PR, Washables, Inc., complained to BBV–PR Vice–President Fermín Contreras, regarding two letters of credit which the International Department had issued. On November 3, 1993, Washables, Inc. complained a second time that Defendant had not sent it a copy of the letters of credit that the International Department had already issued. Plaintiff accepted that the International Department had made a mistake, and BBV–PR was forced to reimburse its client for the expenses it incurred as result of this error. In May 1994, Washables, Inc. complained for a third time, stating that the International Department was extremely slow in issuing the letters of credit and was not sending it copies of the letters of credit that it did eventually issue.

In June 1994, it became apparent that interpersonal and attitude problems plagued the International Department under Plaintiff's supervision. Margarita Echevarría and Wanda Negrón, employees under Plaintiff's supervision, began to have a personal conflict. Echevarría complained about the way Plaintiff treated her and other employees regarding the International Department.

In June and July 1994, an audit of the International Department, conducted by two Puerto Rican evaluators, called the International Department "deficient". It revealed that a file was missing and that there was an outstanding balance of $69,000. While Plaintiff's 1993 evaluation was "excellent", he received a "low" score on his 1994 performance evaluation, which concluded that he was not complying with BBV–PR's expectations in the areas of attendance, planning, decision-making, and compliance. Defendants also allege that during October 1994, Plaintiff had up to twenty personal visits at the office during working hours.

In April or May of 1995, Plaintiff's direct supervisor, Armando Cadrecha, told him that the International Department was being managed inadequately. In June and July of 1995, the International Department was audited again with the participation of auditors of BBV–Spain. As in the 1994 evaluation, the conclusion was that the International Department was "deficient", suffering from large discrepancies in the letters of credit issued and in the outstanding entries. The International Department was the only department, out of five, to be classified as deficient in the 1995 audit. In July 1995, one of BBV–PR's clients, Octagon Marine Services, Inc., sent it a written complaint regarding the International Department and a March 13, 1995 transaction which was allegedly mismanaged. Plaintiff claims that this error was on the part of branch officers, not from the International Division.

Finally, Defendant claims that prior to Plaintiff's termination, they had not selected a permanent replacement. Defendant states that Hurtado, a Spanish citizen, performed Plaintiff's duties only temporarily, and had been working for Defendant since 1974 in the International Department of BBV–Spain. Plaintiff claims he produced direct evidence of discrimination by virtue of his sworn statement that Defendant gave preferential treatment to Spanish employees. Plaintiff testified at his deposition that five comments

revealed Defendant's discriminatory intent. First, Plaintiff alleges that he overheard Ileana Solivan in the office of Cadrecha, Plaintiff's direct supervisor, said, "This Chilean will not last until December." However, Plaintiff did not actually see Solivan make this comment because the office door was closed at the time. Second, Plaintiff stated that he witnessed Cadrecha tell Hurtado that if some advertisements did not appear, "he himself would make sure of picking up his [Hurtado's] suitcase and sending him on his way out." Third, Cadrecha told Plaintiff that the International Department was poorly administered. Fourth, a bank employee told Plaintiff to be careful, "because they are watching you." Fifth, another bank employee told Plaintiff, "well, you wouldn't be the first one who has had a private investigator checking up on them."

Furthermore, Plaintiff alleges he was harassed in that he did not have office space, a telephone extension or a computer. Plaintiff claims that he was discriminated against because he was not evaluated a second time like other employees who had received low scores. He claims that his low 1994 evaluation was a result, in part, of the audit being conducted by persons with no knowledge of the International Division and who were not Puerto Ricans. Plaintiff maintains that Defendant had complimented his performance in the past.

Defendant terminated Plaintiff's employment on August 2, 1995. Defendant states that it dismissed Plaintiff because: (1) two audits of the international Department concluded that the Department was "deficient"; (2) clients were complaining about the International Department's service; and (3) Plaintiff's personal performance evaluations were poor. Defendant maintains that prior to Plaintiff's termination, it had not selected a permanent replacement. Defendant claims it only temporarily assigned Plaintiff's duties to José M. Hurtado, a Spaniard who has worked for the Bank since 1974 and has had considerable experience in the International Department of BBV–Spain. Defendant later hired Arlene Izquierdo, a Puerto Rican, as Plaintiff's permanent replacement as head of the International Department.

## II.

### Standard for Summary Judgment

The standard for summary judgment is straightforward and well-established: A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine," "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.* Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256. Summary judgment exists to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts*

---

*Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992); *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993).

## III.

### *Title VII and the Age Discrimination in Employment Act*

#### A. *McDonnell Douglas Analytical Framework*

The Age Discrimination in Employment Act (ADEA) provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1) (1985). Title VII provides that it is unlawful for an employer to discharge any individual or otherwise discriminate against him on the basis of his national origin.[1]

"Direct evidence is evidence which, in and of itself, shows a discriminatory animus." *Jackson v. Harvard Univ.*, 900 F.2d 464, 467 (1st Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). Where there is no direct evidence or "smoking gun," demonstrating that the employer's actions were motivated by age or national origin, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), provides the legal framework with which to analyze the issue. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–07, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993) (applying the *McDonnell Douglas* formula to a Title VII discrimination claim); *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 420 (1st Cir.1996) (stating that "[a]bsent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework"). The *McDonnell Douglas* framework requires that a plaintiff establish a *prima facie case* by demonstrating that he (i) was within a protected class; (ii) met the employer's legitimate performance expectations; (iii) was actually or constructively discharged; and(iv) was replaced by another individual with similar skills and qualifications. *See DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997); *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 478 (1st Cir.1993); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

Once the plaintiff establishes the *prima facie* case, there is a presumption that the employer unlawfully discriminated. *Vega*, 3 F.3d at 478; *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1110–11 (1st Cir.1989). The burden of production then shifts to the employer defendant who must rebut the inference of discrimination by articulating some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden, the inference of unlawful discrimination is erased, and the burden shifts to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *Vega*, 3 F.3d at 479; *Mesnick*, 950 F.2d at 823. At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *Vega*, 3 F.3d at 479; *Mesnick*, 950 F.2d at 825; *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 614, 113 S.Ct. 1701, 1706, 1708, 123 L.Ed.2d 338 (1993). Throughout this analysis, it is important to note that plaintiff maintains the burden of proving that he would not have been fired but for his membership in a protected class. *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1335 (1st Cir.1988). Thus, federal law "does not stop a company from discharging an employee for any reason (fair or un-

---

1. Title VII of the Civil Rights Act of 1964 provides, in relevant part:

   It shall be an unlawful employment practice for an employer —
   (1) [t]o discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... national origin ...; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... national origin.

   42 U.S.C. § 2000e–2(a).

**64**

fair) or for no reason, so long as the decision to fire does not stem from the person's age [or national origin]." *Freeman,* 865 F.2d at 1341 (1st Cir.1988).

## IV.

### Analysis

Plaintiff does not offer any direct, "smoking gun" evidence of discrimination. Thus, the *McDonnell Douglas* formula is applicable. Plaintiff clearly establishes the first and third elements of the prima facie case since he is a member of a protected class by virtue of his Chilean national origin and his age, and he was terminated from his employment position with Defendant.

■ However, Plaintiff has not shown that he met Defendant's employment expectations or that these expectations were unreasonable or illegitimate. Despite this showing not being particularly burdensome at the prima facie stage, *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995), Plaintiff, nevertheless, fails to pass this hurdle.

Defendant's legitimate reasons for terminating Plaintiff include the fact that two years in a row, different evaluators of different national origins found the International Department under Plaintiff's supervision to be deficient; two different clients complained of the International Department's poor performance; and Plaintiff used his working hours and facilities for personal purposes.

Plaintiff defends his actions by arguing that the mistakes in the letters of credit for Washables, Inc. and Octagon Marine Services, Inc. were not errors of the International Department, but of another branch. Plaintiff claims that, acting as a responsible supervisor, he held a staff meeting and resolved the personal problems plaguing the Department.

Plaintiff also takes issue with the Department's poor evaluations. We find unpersuasive Plaintiff's argument that the International Department was not given a second evaluation after the 1994 poor evaluation, since the Department did eventually receive a second evaluation in 1995 and again scored poorly. We also find it inconsequential that

some of his evaluators were of European decent. Plaintiff offers only conclusory accusations and no specific evidence that the evaluators lacked the appropriate level of knowledge of the International Department. We, therefore, find this objection unpersuasive as well.

The few comments made by coworkers regarding Plaintiff's age or national origin are isolated and ambiguous and, therefore, insufficient to prove discriminatory intent. *See Speen v. Crown Clothing Corp.,* 102 F.3d 625, 636 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2457, 138 L.Ed.2d 214 (1997); *Lehman v. Prudential Ins. Co. of America,* 74 F.3d 323, 329 (1st Cir.1996).

Finally, Plaintiff counters that the alleged personal visits at the office were mostly during lunch hours and were not "solely" for personal matters. However, he does not provide any example of an instance in which a visit was of a business nature.

None of Plaintiff's arguments and explanations create a genuine issue as to whether Plaintiff met Defendant's legitimate nondiscriminatory performance expectations. That Defendant had at one time complimented Plaintiff on his performance is insufficient to create a genuine issue, since there is also accompanying evidence indicating an official displeasure with Plaintiff's performance. *See Maldonado–Maldonado v. Pantasia Mfg. Corp.,* 956 F.Supp. 73, 77 (D.P.R.1997) (stating that evidence of positive performance evaluation is sufficient to create an issue of fact where there is no other sort of evidence indicating any official displeasure with employee's performance); *Pérez Ortiz v. Supermercados Amigo, Inc.,* 964 F.Supp. 607, 611 (D.P.R.1997).

Looking at the record, we find it devoid of adequate evidence of Defendant's discriminatory intent requiring a trial on the merits. Plaintiff simply has not provided sufficient evidence to allow a jury to draw a reasonable inference that Plaintiff was fired due to his age or national origin.

## V.

### Supplemental Claims Under Puerto Rico Law

■ A federal district court with jurisdiction over federal claims also has "supple-

mental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (1993). However, as we have dismissed the foundational federal claims under the ADEA and Title VII, we must reassess whether we retain jurisdiction over the Puerto Rico law claims. As the Supreme Court stated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966):

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Balancing the interests of fairness, judicial economy, convenience, and comity, we, accordingly, decline jurisdiction over the Puerto Rico claims as we have dismissed the foundational federal claims at this early stage of litigation. *See Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995).

### VI.

#### *Conclusion*

Plaintiff has failed to establish a prima facie case of discrimination in violation of the ADEA or Title VII according to the *McDonnell Douglas* formula. We, accordingly, **GRANT** Defendant's motion for summary judgment. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** for lack of supplemental jurisdiction.

**IT IS SO ORDERED.**