USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2055 MARIA DE LOS A. PAGES-CAHUE, MARIA PILAR LOPEZ, AND GILBERTO IZQUIERDO-SANTIAGO, Plaintiffs - Appellants, v. IBERIA LINEAS AEREAS DE ESPA A, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Justo Arenas, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _____________________ Enrique J. Mendoza-M ndez, with whom Mendoza & Bac , ___________________________ ________________ Francisco M. Troncoso and Troncoso & Becker were on brief for _____________________ __________________ appellants. James D. Noel III, with whom Ledesma, Palou & Miranda was on _________________ ________________________ brief for appellee. ____________________ April 25, 1996 ____________________ TORRUELLA, Chief Judge. Plaintiffs-Appellants Mar a de TORRUELLA, Chief Judge. ___________ los A. Pages-Cahue ("Pages"), Mar a Pilar L pez ("L pez"), and Gilberto Izquierdo-Santiago ("Izquierdo") (collectively, "Appellants") appeal the district court's grant of summary judgment to Appellee Iberia L neas A reas de Espa a ("Iberia") on claims of age discrimination under the Age Discrimination in Employment Act of 1967, as amended ("the ADEA"), 29 U.S.C. 621 et __ seq. Pages also seeks appeal of the district court's grant of ___ summary judgment to Iberia on her claim under Puerto Rico Law No. 80, 29 L.P.R.A. 185a et seq.1 L pez appeals the district ______ court's grant of summary judgment to Iberia on her claim for an  ____________________ 1 Appellants' brief only attempts to raise an argument under Puerto Rico Law No. 80 with respect to Pages. The brief makes a reference to Law No. 80, suggesting implications for L pez' ADEA claim, but does not actually include an argument for a claim under Puerto Rico Law No. 80. Therefore, L pez and Izquierdo have waived any issues regarding the district court's grant of summary judgment on their Law No. 80 claims. See Frazier v. ___ _______ Bailey, 957 F.2d 920, 932 n.4 (1st Cir. 1992) (noting that "[a] ______ state law claim which is not addressed in a brief is waived"). Pages' Law No. 80 claim, however, has not been waived. Similarly, appellants have not included any argument regarding Puerto Rico Law No. 100 beyond a passing reference under Pages' Puerto Rico Law No. 80 claim. As a result, appellants have also waived any issues regarding the district court's grant of summary judgment on their Law No. 100 claims. Id. ___ While appellants' counsel asserted at oral argument that we should not find these arguments waived because the facts necessary to them were argued in the context of their appellate brief's ADEA argument, we must disagree. In the absence of any discussion beyond citations to these Puerto Rico statutes, and in the absence of any submitted argument, we conclude that these arguments are waived. See United States v. Zannino, 895 F.2d 1, ___ _____________ _______ 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.") (quoting Rivera-G mez v. de Castro, 843 F.2d 631, 635 ____________ _________ (1st Cir. 1988)). -2- unpaid balance of sick leave and overtime compensation due under Puerto Rico Law No. 379 of May 15, 1948, as amended, 29 L.P.R.A. 271 et seq., ("Law 379" or "Puerto Rico Overtime Compensation _______ Act"), and Puerto Rico Law No. 96 of June 26, 1959, as amended, 29 Laws of P.R. Anno. 246 et seq. ("Law 96"). We affirm. ______ I. BACKGROUND I. BACKGROUND The following facts are not in dispute. In 1992, Iberia's net loss for its San Juan operations was $14,305,504. For the seven prior years, plus the year 1992, Iberia's net loss in San Juan was $136,795,292. Beginning in the year 1991, Iberia implemented a worldwide reorganization of its operations, including substantial cutbacks in Puerto Rico. During the time period from May 1991 to November 1992, 14 of Iberia's 32 employees in Puerto Rico were laid off or otherwise ceased to work for Iberia. On September 30, 1992, the three appellants in this case were discharged. This appeal also contains several disputed facts. Because we must determine whether the disputes of fact are both genuine and material, we discuss these disputed facts in the course of our discussion of the law. II. STANDARD OF REVIEW II. STANDARD OF REVIEW We examine a grant of summary judgment de novo, viewing _______ the evidence, and all reasonable inferences therefrom, in the light most favorable to the party resisting summary judgment. Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995); _______ _________________ see LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. ___ _______ ___________________ -3- 1993), cert. denied, 114 S. Ct. 1398 (1994). Summary judgment is ____________ properly granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); see LeBlanc, 6 F.3d ___ _______ at 841; Goldman, 985 F.2d at 1116. _______ III. DISCUSSION III. DISCUSSION A. The ADEA Claims  A. The ADEA Claims  1. The Legal Framework 1. The Legal Framework In ADEA discrimination lawsuits, plaintiffs bear the ultimate burden of proving that their ages were the determinative factor in their discharge, "that is, that [they] would not have been fired but for [their] age." LeBlanc, 6 F.3d at 841; see _______ ___ Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991), _______ _________________ cert. denied, 504 U.S. 985 (1992). "At least where there is ____________ little overt evidence of age discrimination, the case usually follows the ritualized burden-shifting paradigm" presented in McDonnell Douglas v. Green, 411 U.S. 792, 802-05 (1973). __________________ _____ LeBlanc, 6 F.3d at 841. See, e.g., Goldman v. First Nat'l Bank _______ ___ ____ _______ _________________ of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993); Lawrence v. __________ ________ Northrop Corp., 980 F.2d 66, 68 (1st Cir. 1992); Mesnick, 950 ______________ _______ F.2d at 823-24. Under the McDonnell Douglas test, plaintiffs must open _________________ with a prima facie showing of certain standardized elements suggestive of possible discrimination. LeBlanc, 6 F.3d at 842. _______ -4- It is undisputed that the employment actions that gave rise to the instant case took place as part of a reduction in Iberia's work force. As a result, each of the Appellants was required to make a prima facie showing (1) that he or she fell within the ADEA's protected age group -- that is, more than forty years of age; (2) that he or she met Iberia's legitimate performance expectations; (3) that he or she experienced adverse employment action; and (4) that Iberia did not treat age neutrally or retained younger persons in the same position. See Woodman, 51 ___ _______ F.3d at 1091; Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st ____ _____________________ Cir. 1993). Establishment of the prescribed prima facie case creates a presumption that the employer engaged in impermissible age discrimination. LeBlanc, 6 F.3d at 842; Goldman, 985 F.2d at _______ _______ 1117. However, to rebut this presumption, the employer need only "articulate a legitimate nondiscriminatory reason for the employee's termination." LeBlanc, 6 F.3d at 842; Goldman, 958 _______ _______ F.2d at 1117. Once the employer meets this burden in an age discrimination case, however, "the McDonnell Douglas presumption _________________ 'drops out of the picture.'" LeBlanc, 6 F.3d at 843 (quoting St. _______ ___ Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2749 _________________ _____ (1993)). The trier of fact then must simply determine, based on the evidence, whether the employer's decision to terminate the plaintiff was motivated by intentional age discrimination. LeBlanc, 6 F.3d at 843. _______ -5- In the context of a summary judgment proceeding, once the employer articulates a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, "before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age." LeBlanc, 6 F.3d at 843; see Goldman, _______ ___ _______ 985 F.2d at 1117; Lawrence, 980 F.2d at 69-70. Direct or ________ indirect evidence of discriminatory intent may suffice, but "the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus." Connell v. Bank of Boston, 924 F.2d 1169, 1172 n.3 _______ _______________ (1st Cir. 1991); see LeBlanc, 6 F.3d at 836; Goldman, 985 F.2d at ___ _______ _______ 1117. Thus, a district court's grant of summary judgment to an employer will be upheld if the record is devoid of adequate direct or circumstantial evidence of the employer's discriminatory intent.  2. L pez and Izquierdo 2. L pez and Izquierdo We treat L pez' and Izquierdo's respective appeals together because the same case law governs both. The district court found that L pez failed to present a prima facie case. It found that while she satisfied the first three required elements of the prima facie case -- she belongs to the protected class, her job performance was adequate, and she was discharged -- she failed to satisfy the fourth element. That is, she failed to show either that Iberia did not treat age -6- neutrally or that younger persons were retained in the same position. Here we assume, without concluding, that L pez has demonstrated a prima facie case, since doing so does not alter the outcome of our analysis. In contrast, the district court concluded that Izquierdo demonstrated a prima facie case, but that he failed to present sufficient evidence for a reasonable trier of fact to infer that Iberia's decision to terminate him was motivated by age animus. On appeal, L pez argues that the district court erred because, in fact, she did produce evidence both that Iberia did not treat age neutrally and that younger persons were retained to do her functions. With respect to age neutrality, L pez asserts that Iberia never considered her seniority in its decision to terminate her, as she argues is required by Puerto Rico Law No. 80.2 However, she cites no authority for the proposition, which we reject, that Puerto Rico Law modifies the ADEA to take into account discrimination against more senior employees, not just  ____________________ 2 Law No. 80 provides, in relevant part, that it shall be the duty of the employer to retain those employees of greater seniority on the job with preference, provided there are positions vacant or filled by employees of less seniority in the job within their occupational classification which may be held by them, it being understood that preference shall be given to the employees discharged in the event that within the six (6) months following their layoff the employer needs to employ a person in like or similar work . . . . 29 L.P.R.A. 185(c) (entitled "Order of retaining employees"). -7- older employees. She also points to the fact that, during the reduction in force, she was not offered employment alternatives made available to Galo Beltr n ("Beltr n") (age 35) and Ernesto Rodr guez ("Rodr guez") (age 48). Furthermore, L pez also maintains that her functions were taken over by a younger employee, Alga Rivera ("Rivera") (age 33), hired soon after L pez' termination. Similarly, Izquierdo (age 45) contends on appeal that the fact that he was not considered for retention or immediate re-hiring as a Sales Agent, as Beltr n and Rodr guez3 were, shows that Iberia did not treat age neutrally in the course of its reduction in force. Izquierdo also alludes to a younger individual in a different department than Sales, who was allegedly offered the opportunity to continue work at a lower salary. However, since Izquierdo failed to proffer any evidence that this other department experienced a reduction in force at a similar time period, or that Izquierdo was qualified for this position, it would plainly be unreasonable to infer a lack of age neutrality from this evidence. As a result, we consider only Izquierdo's arguments regarding Beltr n and Rodr guez. We note that Izquierdo does not point to evidence contravening Iberia's position that Beltr n and Rodr guez were simply re-hired at lower  ____________________ 3 Izquierdo argues that although Rodr guez is older, Izquierdo was more senior at the time of his dismissal. However, an inference of age animus would be plainly unreasonable where the retained person was older. And Izquierdo has not cited _____ authority, and we have not found any, for the proposition that more senior, but younger, employees fall within the ADEA's protected class. -8- pay to do the same job they had done previously. Neither L pez or Izquierdo has argued or adduced evidence that Sales Agents Beltr n and Rodr guez were not, as the district court concluded, occupying positions below that of Coordinators L pez4 and Izquierdo. In Holt v. Gamewell Corp., 797 F.2d 36, 38 (1st Cir. ____ ______________ 1986), we confronted arguments similar to those of L pez and Izquierdo. In that case, the appellant manager argued that, in lieu of dismissing him, his employer should have discharged one of the employees he supervised and given that job to appellant. Thus, we rejected that argument as unsupported by legal authority, as in the instant case, and as requiring that the court encroach too far into areas which should be left to "the company's legitimate management." Id. at 38. ___ The Second Circuit's opinion in Parcinski v. Outlet _________ ______ Co., 673 F.2d 34, 37 (2d Cir. 1982), provides a strong statement ___ of the concerns to which Holt alludes. Considering an argument ____  ____________________ 4 L pez has also argued that, while she was appointed to the position of "Coordinator B" of the Sales Department on May 25, 1990, her title was fictitious, as she was actually an "Executive Secretary." This contention has several problems. Although argued to the court, it was never supported by a sworn statement. Additionally, L pez herself contradicted this proposition; in her deposition, she stated that "regardless of what they wanted to call me, my work was [as a] Sales Coordinator." Finally, L pez' appointment to "Coordinator B" took place three years prior to her discharge. It seems unlikely that Iberia promoted her to this fictitious position three years in advance with the intent of later using that title to discriminate against her. As a result, we conclude that the district court correctly found that this contention could not reasonably be inferred from the evidence presented. -9- resembling that of the instant case and of the appellant in Holt, ____ the court stated that: Assuming there were lower echelon, poorer paying jobs in the restructured enterprise which [appellants] were qualified to fill, [the employer] would be met with serious morale problems arising out of the substantial reductions in responsibilities and salaries that would accompany such moves. Id.; see Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir. 1986) ___ ___ ________ __________ (stating that "[w]here an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company"); Sahadi v. Reynolds Chem., ______ ______________ 636 F.2d 1116, 1117 (6th Cir. 1980). In accord with the reasoning behind these cases, we conclude that we must reject L pez' and Izquierdo's arguments comparing their dismissals to Iberia's treatment of Beltr n and Rodr guez, and L pez' argument with respect to Rivera. Even assuming, without holding, that L pez and Izquierdo stated prima facie cases, we reject their arguments that anti-age animus can be reasonably inferred from the fact that they were not offered alternative employment opportunities, as Beltr n and Rodr guez were. Accordingly, we also reject L pez' argument that discriminatory animus can be reasonably inferred from the hiring of Rivera for a position inferior to L pez' previous job as "Coordinator B." Because we conclude that the evidence adduced by L pez and Izquierdo, taken as true, cannot suffice to support a reasonable inference of anti-age animus, we uphold the district court's grant of summary judgment on their ADEA claims. -10- 3. Pages 3. Pages The district court found that Pages demonstrated a prima facie case, but failed to present sufficient evidence from which a reasonable factfinder could infer anti-age animus. Because it does not change our analysis, we assume without concluding that the district court properly found that Pages (age 51) carried her burden of presenting a prima facie case. As a result, we review her case to determine whether the evidence as a whole was sufficient to support a reasonable inference of age animus in the decision to dismiss her. LeBlanc, 6 F.3d at 836. _______ Pages argued that Iberia's anti-age animus could be inferred by comparing her dismissal with the retention of: (1) Mar a Garc a ("Garc a") (age 61), an Executive Secretary; (2) Sandra Medina ("Medina") (48), an Executive Secretary; (3) Rivera (33), a Sales Assistant; and (4) Nitza Al s ("Al s") (30), an employee of an independent contractor who performed functions similar to Pages'. Even assuming that three comparisons with non-discharged employees could permit an inference of anti-age animus in a reduction in force case as a matter of law, these three particular comparisons cannot. First, Garc a is in fact older than Pages, a fact that Pages does not dispute. Second, a reasonable inference of anti-age animus cannot be drawn from the comparison of the retention of Medina, an executive secretary at Iberia's administrative offices in Miramar, Puerto Rico, and the discharge of Pages, "Secretary to the Airport Manager," at the airport in Isla Verde, Puerto Rico. Pages does not dispute that -11- the position of Airport Manager had been eliminated. Thus, to retain her rather than Medina, Iberia would have had to transfer Pages to another position or location. And, as noted in the discussion of L pez and Izquierdo, Appellants cite no authority for the proposition that an employer conducting a reduction in force must offer such transfers or relocations -- in fact, authority exists for the proposition that employers face no such obligation. See Holt, 797 F.2d at 38; Ridenour, 791 F.2d at 57; ___ ____ ________ Parcinski, 673 F.2d at 37. We must reject any inference of age _________ animus drawn from a comparison of Pages with Rivera for the same reason we rejected comparisons between L pez and Rivera: employers conducting a reduction in force face no obligation to offer "lower echelon, poorer paying jobs in the restructured enterprise" to all older employees. Parcinski, 673 F.2d at 37; _________ see Holt, 797 F.2d at 38. ___ ____ Finally, the comparison with Al s cannot justify a reasonable inference of anti-age animus because Al s was not employed by Iberia, but by another company, G.M.D., with a contract to perform services for Iberia. This circuit has previously stated that [a] discharged employee 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.' Rather, 'a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.' -12- LeBlanc, 6 F.3d at 846 (citations omitted) (quoting Barnes v. _______ ______ GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 498 ______________ ____________ U.S. 878 (1990)). Thus, to reasonably infer that Pages was replaced by a younger employee, we would have to conclude that Pages' duties, and no others, were allocated to Al s, and that Al s should be considered an Iberia employee. However, in Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 566 ________ ________________________________ (11th Cir. 1992), the court rejected as insufficient to establish a prima facie case, without more, an employee's claim that his employer assigned his work to an independent contractor corporation that decided to employ younger employees to do the work. What is more, the instant case has a grave flaw that was not present in Mitchell: Iberia's contract with G.M.D. predates ________ the reduction in force that gave rise to Pages' claim. Since Pages has failed to present evidence suggesting that Iberia could, at its discretion, retain her and have G.M.D. eliminate Al s, any inference of age animus drawn from Iberia's "retention" of Al s would be simply unreasonable. As a result, we conclude that the comparisons Pages points to cannot support a reasonable inference of age animus on the part of Iberia. B. Pages' Puerto Rico Law No. 80 Claim B. Pages' Puerto Rico Law No. 80 Claim Pages also argues that the District Court erred in granting summary judgment for Iberia on her claim under Puerto Rico Law No. 80. Law No. 80 provides, in relevant part, that  [e]very employee in commerce, industry or any other business . . . who is -13- discharged from his [or her] employment without good cause, shall be entitled to __________________ receive from his employer, in addition to the salary he may have earned: (a) The salary corresponding to one month, as indemnity; (b) An additional progressive indemnity equivalent to one week for each year of service. 29 L.P.R.A. 185a (emphasis added). In response, Iberia argues that it had "good cause" to discharge Pages, pointing to 185b, which provides that "[j]ust cause . . . shall be understood to be . . . reorganization changes . . . [or] [r]eductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge." 29 L.P.R.A. 185b(e)-(f). Pages has not presented evidence to rebut Iberia's evidence that it eliminated its Sales Department after it had incurred substantial operating losses in San Juan. However, Pages points to 185c, which provides that, where employees are discharged due to reorganization or a reduction in production, sales or profits, "it shall be the duty of the employer to retain those employees of greater seniority on the job with preference, provided there are positions vacant or filled by employees of less seniority in the job within their occupational classification which may be held by them . . . ." 29 L.P.R.A. 185c. In the context of her Law No. 80 argument, Pages suggests that a comparison of her discharge with the retention of Executive Secretaries Garc a and Medina raises a genuine issue of material fact as to whether Iberia complied with -14- Law No. 80. According to Pages, she was more senior than Garc a or Medina. In fact, Pages has provided no evidence to rebut Garc a's testimony, in her sworn affidavit, that Garc a has in fact been with Iberia as long or longer than Pages. We thus turn to the comparison with Medina, since the record evidence does suggest that Medina was less senior than Pages. Pages argues that even though Medina's position was in Miramar, Puerto Rico, and Pages' was at the airport in Isla Verde, Iberia should have given Pages the option to transfer to Miramar to replace Medina. This argument neglects two different provisions in Law No. 80. First, Law No. 80 states that seniority need not be followed where "there is a clear and conclusive difference in favor of the efficiency or capacity of the workers compared . . . ." 29 L.P.R.A. 185c. The relevant evidence shows that Medina's position at the Miramar office and Pages' position at the airport in Isla Verde were not fungible. Medina had worked in Miramar since 1972, while Pages had worked in Isla Verde since 1970. Without more evidence, the district court could have found that no genuine issue of material fact was raised as to the relative efficiency of keeping Medina in her own position, rather than transferring Pages, as it was Pages' airport position that was being eliminated. Furthermore, Pages ignores 185c(a), which states in relevant part that [i]n the case of discharges or layoffs . . . in companies that have several -15- offices . . . and whose usual and regular practice is not to transfer employees from one office . . . to another, and that said units operate in a relatively independent manner with regard to personnel aspects, the seniority of the employees within the occupational classification subject to the layoff shall be computed by taking into consideration only those employees in the office . . . in which said layoff shall occur. 29 L.P.R.A. 185c(a). Iberia has argued throughout that all but one position at the Airport has been eliminated since 1991, in accord with its reorganization plan, and that transfers were not possible due to the different nature of the tasks which the airport employees performed as compared to the Miramar office employees. The only evidence to which Pages points fails to generate an issue of fact, since neither she, nor Medina, nor Garc a, has apparently been transferred since 1970, when Pages began work at Iberia. As a result, we affirm the district court's grant of summary judgment to Iberia on Pages' Law No. 80 claim. C. L pez' Puerto Rico Law No. 379 Claim C. L pez' Puerto Rico Law No. 379 Claim L pez also challenges the district court's grant of summary judgment on her claim under Puerto Rico Law No. 379 for overtime pay she contends Iberia owed her. Puerto Rico Law No. 379 states, in pertinent part, that "forty hours of work constitute a workweek," 29 L.P.R.A. 271, "extra working hours are . . . hours that an employee works for his employer in excess of forty during any week," 273(b), and "[e]very employer who employs or permits an employee to work during extra hours, shall -16- be bound to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours," 274.  The district court, however, concluded that the overtime provisions did not apply to L pez, since 288 states that Law No. 379 does not apply to exempt "employees" working as "executives, administrators, or professionals, as these terms may be defined by the Puerto Rico Minimum Wage Board." 29 L.P.R.A.  288; see, e.g., Lehman v. Ehret Inc., 103 D.P.R. 264, 267 (P.R. ___ ____ ______ __________ 1975) (discussing the definition of "administrator"). L pez challenges the district court's application of the Minimum Wage Board's Regulations. Under the authority granted it by 288, the Minimum Wage Board promulgated regulations by substantially adopting definitions found in the federal regulation on the same matter. See Santiago v. Corco, 114 D.P.R. 267, 269 (P.R. 1983). On ___ ________ _____ appeal, both parties argue for, and we agree with, the application of the short test, since it is undisputed that Pages' weekly salary was "not less than $295," as the regulation requires for the short test's application. Regulation No. 13, Article III(f), Fourth Revision, Commonwealth of Puerto Rico Minimum Wage Board (1990). As a result, she is excluded from the coverage of Law No. 379's provisions if: (a) [she] perform[ed] office or nonmanual field work directly related to management policies or to general business operations of the employer or of the customers of the employer; and -17- (b) [she] customarily and regularly exercise[d] discretion and independent judgment. Id., Article III. ___ L pez argues that a genuine issue of material fact existed as to whether she performed office work directly related to management policies or general business operations, and whether she customarily and regularly exercised discretion and independent judgment. She argues specifically that she did not perform supervisory functions and that she was in fact an "Executive Secretary" despite her title of "Coordinator B." However, Article III(a) and (b) contain no requirement that one perform supervisory functions. To be exempted from Law No. 379, one need only perform "office . . . work directly related to management policies or to general business operations of [one's] employer." Article III(a). Thus, L pez' first assertion, even if believed, cannot create a genuine issue that would preclude a grant of summary judgment for Iberia, since it fails to respond to any relevant requirement in Regulation No. 13. As a result, we turn to L pez' contention that she was an Executive Secretary rather than a Coordinator, and that Law No. 379 cannot apply to her as an Executive Secretary. In addressing this assertion in the ADEA context, see supra, we ___ _____ rejected this contention as unsupported by a sworn statement, explicitly and directly contradicted by her sworn deposition, and rebutted by evidence Iberia proffered. However, in the ADEA context the standard of review was whether L pez showed evidence -18- sufficient for the factfinder reasonably to conclude that she was discharged due to discriminatory intent. We noted in passing that because Iberia's alleged mistitling of her position occurred three years' before her discharge, that fact, together with her lack of evidence, rendered any age inference unreasonable. However, while it would be unreasonable for a finder of fact to think that an employer mistitled an employee's position to cloak its age discrimination years later, it would not be similarly unreasonable to believe that employers seeking to avoid paying overtime would mislabel a position to take advantage of Law No. 379's exemptions for managers, professionals and administrators. As a result, we evaluate L pez' argument that she was in fact an "executive secretary," assuming without concluding that she adequately proffered evidence to raise this issue.  Neither party has cited Puerto Rico case law interpreting Law No. 379 with respect to supervisory duties or to the title of "Executive Secretary." To determine whether L pez' assertion could create a triable issue of fact, we may consider the federal regulations which implement the Federal Fair Labor Standards Act. See L pez Vega v. Vega Otero, Inc., 103 P.R.R. 243, 246-47 (P.R. ___ __________ ________________ 1974) (deciding that where appellee was an executive under the provisions of the Federal Fair Labor Standards Act and its regulation, he could not maintain a claim against his employer for extra hours); Rodr guez v. Concreto Mixto, Inc., 98 P.R.R. _________ ____________________ 568, 575-76 (P.R. 1970) (determining whether or not an employee or worker is a person employed in a bona fide executive capacity -19- by following the rules set forth in 29 C.F.R. 541.1 et seq.). ______ These regulations, in describing those exempt as "administrative" employees, note that  [i]n modern industrial parlance there has been a steady and increasing use of persons who assist an executive in the performance of his duties without themselves having executive authority. Typical titles of persons in this group [include] . . . executive secretary. . . ___________________ .  29 C.F.R. 541.201 (emphasis added). As a result, even assuming that she was an Executive Secretary, that would not disqualify her from being an exempt employee, assuming that she did office work related to management policies and general business operations, and that she customarily and regularly exercised discretion and independent judgment. Iberia's submitted evidence and L pez' co-appellant Izquierdo's testimony as to L pez' duties both presented ample evidence that L pez exercised discretion and independent judgment. In particular, Izquierdo stated that L pez helped him supervise sales personnel; coordinated the work of the salesmen; attended social and civic activities "to represent the company"; and exercised her own discretion with respect to her work. Because L pez failed to present evidence to rebut Izquierdo's testimony, and given Iberia's evidence that she exercised discretion and independent judgment, we conclude that no issue of fact existed regarding this point. As a result, we conclude that she falls under Regulation No. 13's exemption from Law No. 379, and thus the district court correctly granted summary judgment on her overtime pay claim to Iberia.  -20- CONCLUSION CONCLUSION As a result of the foregoing, the judgment of the district court is affirmed. affirmed ________ -21-