**Mario HERNANDEZ MARRERO,
et al., Plaintiff,**

v.

**CROWLEY AMERICAN TRANSPORT,
INC.; et al., Defendants.**

No. Civ. 99–2047 SEC.

United States District Court,
D. Puerto Rico.

June 12, 2002.

José R. Fanco–Rivera, San Juan, PR for plaintiffs.

Raquel M. Dulzaides, Jimenez, Graffam & Lausell, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendants' motion for summary judgment (**Docket # 30**), where they argue that Plaintiffs have failed to establish a *prima facie* case of discrimination. Having reviewed said motion, Plaintiffs' opposition (**Docket # 48**), and Defendants' reply (**Docket # 50**), the Court will **GRANT** Defendants' motion, and the case will be **DISMISSED WITH PREJUDICE.**

### Factual Background

This is an action under: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), (2) the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); (3) the Federal Executive Order No. 11246, as amended (the "Executive Order"), (4) the Constitution of the United States, and (5) Puerto Rico's Law No. 100 of June 30, 1959, as amended, 29 L.P.R.A. §§ 146 *et seq.* ("Law 100"). In addition, Plaintiff Marily Soberal Martell claims that she suffered damages recoverable under the general tort law of Puerto Rico, Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3151 ("Article 1802"), as the result of the discrimination allegedly suffered by her husband.

Defendant corporations are part of the liner ocean cargo transportation industry. They operate in Puerto Rico, as well as

other parts of the United States, such as the East Coast, West Coast, Gulf, Virgin Islands and international ports. Crowley Environmental Services ("CES") used to be a division of Crowley Towing and Transportation Co. ("CTT"). CES used to engage in the business of environmental cleaning in its facilities at San Miguel, Santurce. CTT used to operate in Puerto Rico at Pier 10 in Puerta de Tierra. CTT's operations mainly consisted of furnishing assistance in the docking and undocking of vessels in the San Juan Harbor and in the towing of cargo barges from the United States and from other ports to San Juan. It also towed petroleum products and operated an oil response vessel, the "Caribbean Protector."

CTT closed its operations at Pier 10 on February 28, 1997 and laid off its employees. However, CES continued operating at its facilities in San Miguel, Santurce, until approximately September, 1998, when it also closed operations and laid-off all its employees.

Plaintiff Mario Hernández started working for CTT on June 27, 1989, as Boarding Agent. Plaintiff worked as Boarding Agent for CTT until February 28, 1997 when its operations at Pier 10 closed. Plaintiff, and approximately 250 employees, were laid-off with the closing of CTT. Nonetheless, CES continued operating at its facilities at San Miguel after the closing of CTT. At that time, CES had a vacancy for the position of Warehouse Coordinator. Plaintiff applied for the position, and was chosen for it. At that time, Plaintiff was 48 years old.

Plaintiff was laid-off again on September 4, 1998, as a result of the closing of CES. All other CES employees were also laid-off. During Plaintiff's tenure at CES, he applied for two (2) positions with CES and CTT's sister company, Crowley American Transport, Inc. ("CAT"): (1) "Coordinator II, Documentation" in Port Everglades, Florida; and (2) "Supervisor, Stevedoring," in Jacksonville, Florida.

The requirements for the position of "Coordinator II, Documentation" were as follows:

*DUTIES*

Ensures expeditious handling of inbound documents in order to facilitate timely delivery of cargo to customer.

*QUALIFICATIONS*

Education:

High School Diploma or G.E.D.

Work Experience:

2–3 years general office experience including at least one year international transportation experience, preferably in import.

Skill and Knowledge Level:

Knowledge of ocean documentation, customs forms and regulations. Knowledge of AMS system highly preferred. Good organizational and communication skills. Data entry skills (1.8 keystrokes per second with 95% accuracy). Bilingual (English/Spanish), preferred. Good ability to work with others (good interpersonal skills). Aptitude for detail-oriented work, requiring extensive follow-through. Effective organizational and communication skills, both written and verbal. Ability to operate standard office machines and equipment such as telephone, calculator, photocopier, data entry keyboard, stapler, etc.

Working Conditions:

Normal office environment with little exposure to excessive noise, dust, temperature and the like. Must comply with all rules, including those that pertain to safety and health. Position may require extended viewing of CR1

and ability to sit for long periods of time. Ability to work overtime as needed.

Defendants allege that Plaintiff did not have the necessary import documentation experience in international transport. They allege that he had less than one year of experience as Warehouse Coordinator, where he coordinated and controlled the use of all equipment, purchased materials and equipment, maintained computerized records on inventory, company vehicle registration renewals, trailer tanks used in storage and disposition of slops, and prorated project invoices. They also claim he had seventeen (17) years of experience as Boarding Agent, where he coordinated with federal and P.R. Port Authority Agency the arrivals of passenger and cargo vessels, attended boarding of several types of vessels/ships, prepared preliminary entries and clearance required by U.S. Customs, established and maintained communication with vessel owners and operators, and made repatriation arrangements for seamen. However, that these job experiences did not fulfill the requirement of at least one year of experience in handling import documentation in international transport.

The decision on who would be hired to fill the aforementioned position was made by a team composed of Tamara Armellini, Luisana Morejón, Nelly Yunta and Zoraida Jirau, all of Hispanic descent. In addition, Armellini, Yunta and Jirau were all over (40) years of age at the time. According to the affidavits presented by Defendants with their motion to dismiss, Jirau asked Armellini to interview Plaintiff for the position, even though his resume did not reflect that he was qualified for it. Yunta and Armellini interviewed Plaintiff on separate occasions. However, after reviewing his resume and discussing his qualifications, the team decided that he did not meet the requirements for the job. CAT

needed someone with experience that could start performing the job functions immediately.

According to the same affidavits presented by Defendants, on January 26, 1998, the Company hired Ms. Maryanne Macknin, who was 50 years old at the time, for the position of "Coordinator II, Documentation." Macknin had approximately fifteen (15) years of prior experience in documentation for imports and exports. Moreover, Defendants have presented evidence sustaining that, from December 1997 to February 1998, in the Freight Services Department at Port Everglades, Florida, seventy percent (70%) of the employees had forty-five (45) years of age or more, and seventy percent (70%) of the employees where of Hispanic descent.

On January 22, 1998, Plaintiff applied for the position of "Supervisor, Stevedoring" in Jacksonville, Florida. The requirements for the position of the "Supervisor, Stevedoring" position were as follows:

*DUTIES:*

To supervise the stevedoring operations in the Jacksonville terminal facility. To ensure safe and efficient loading and discharging all vessels and terminal activity.

*QUALIFICATIONS:*

Education/Work Experience:

Formal training program after high school (vocational, business or technical school) or an Associate's Degree in related field strongly preferred.

Skill and Knowledge Level:

Experience in developing load plans helpful. Ability to plan, lead, organize and supervise all areas regarding terminal operations required. Effective communication skills, both written and verbal. Familiarity with Import/Ex-

port documentation, procedures related to container/trailer movements. Bilingual (English/Spanish) preferred. Working conditions:

Works both inside an office environment and also outside in conditions of both high and low temperatures. May be deposed to odors, dust, dirt, mechanical hazards, high noise levels, and potentially dangerous equipment. Must comply with all rules, including those that pertain to safety and health. Overtime, short notice travel, weekend duties and 24–hour "on-call" status essential job requirements.

Ms. Bobbie Burch was in charge of the initial screening and interview of the applicants for the "Supervisor, Stevedoring" position. According to the affidavits presented by Defendants, after the initial review of his resume, Burch determined that Plaintiff had no supervisory experience. In addition, despite having worked in areas related to terminal operations he did not have experience in **all areas** of terminal operations. Therefore, he was not interviewed for the position of "Supervisor, Stevedoring." On February 5, 1998, CAT made an employment offer to Mr. Thomas Bouchelle, who was 45 years old at the time, and who was, according to the affidavits, the most qualified candidate, since he had performed the required job functions before for the Company.

Having been rejected for these two positions, Plaintiff filed this action claiming that he was not considered for these jobs because of his age and his national origin.

**Summary Judgment Standard**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the mov-

ant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *See also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the out-

come of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colón,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994); **the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions."** *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz,* 896 F.2d at 8, *quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181

(1st Cir.1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

**Plaintiff's ADEA and Title VII claims**

■ This case revolves mainly around the two separate refusals to hire Plaintiff by CAT, after he had been laid-off by CES and CTT, respectively. Plaintiff claims that these refusals were motivated by a discriminatory animus because of his age and national origin in violation of ADEA and Title VII. Under both Title VII and the ADEA, the plaintiff bears the burden of establishing that the defendant discriminated against him because of his age or nationality. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1011 (1st Cir.1979); *Rossy v. Roche Prods.,* 880 F.2d 621, 625 (1st Cir. 1989). That ultimate burden consists of proving that his age or his nationality were a determinative factor in the employer's decision. *Mesnick v. General Elec. Corp.,* 950 F.2d 816 (1st Cir.1991).

In some cases, plaintiff will have enough direct or "smoking gun" evidence to establish such discrimination without more. Most likely, however, plaintiff will possess little overt evidence of discrimination, and will have to rely on the much utilized burden-shifting standard enunciated in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *Pages–Cahue v. Iberia Lineas Aereas de España,* 82 F.3d 533, 536 (1st Cir.1996). *See also Serrano–Cruz v. DFI Puerto Rico,* 109 F.3d 23 (1st Cir. 1997). In using this method, a plaintiff must first establish a *prima facie* case of discrimination.

■ Any claimant in a refusal to hire case who avails himself of the *McDonnell* paradigm, must first make his *prima facie* case of discrimination by showing that

plaintiff (1) is a member of a protected class; (2) he applied and was qualified for the position in question; (3) that despite his qualifications, he was rejected; and (4) that, after rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications. *Woods v. Friction Materials. Inc.*, 30 F.3d 255, 259 (1st Cir. 1994).

■ Courts have generally interpreted this prima facie showing quite liberally in plaintiff's favor. Once a plaintiff satisfies this prima facie requirement, he establishes a presumption that his employer violated the anti-discrimination statute. *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996). This is, however, a rebuttable presumption, and the "burden of persuasion, as opposed to the burden of production," will lie on plaintiff all throughout the proceedings. *Serrano–Cruz*, 109 F.3d at 26.

■ It is not altogether difficult for a defendant to rebut the preceding presumption. To do so, an employer need only "articulate a legitimate nondiscriminatory reason for the employee's termination." *LeBlanc v. Great American Insurance*, 6 F.3d 836, 842 (1st Cir.1993). "At this stage, the court's role is 'not to second-guess the business decisions of an employer, imposing [the court's] subjective judgments of which person would best fulfill the responsibilities of a certain job.'" *Soto v. Runyon*, 13 F.Supp.2d 215, 220 (D.P.R.1998) *citing Rossy*, 880 F.2d at 625. In *Scott v. University of Mississippi*, 148 F.3d 493, 508 (5th Cir.1998), the Fifth Circuit held:

> We have held that a plaintiff can take his case to a jury with evidence that he was clearly better qualified than [other] employees who were selected for the position at issue....

Moreover, in pursuing this inquiry, we recognize that the judicial system is not as well suited by training and experience to evaluate qualifications ... in other discipline as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated. Thus, **"unless disparities in curricula vitae are** so **apparent as virtually to jump** off **the page and slap us in the face,** we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." (emphasis added) (internal citations and quotations omitted).

See also *Deines v. Texas Dept. of Prot. & Regu. Services*, 164 F.3d 277, 280 (5th Cir.1999).

■ Once the employer complies with this requirement, "the *McDonnell Douglas* presumption 'drops out of the picture'." *Id., quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Pages–Cahue*, 82 F.3d at 536. The fact that the presumption "drops out of the picture" merely means that plaintiff once again has the burden of demonstrating that the employer's allegedly legitimate reason for terminating her was only a pretext, and that its decision was actually motivated by a discriminatory animus. *Pages–Cahue*, 82 F.3d at 536. *See also Maldonado–Maldonado v. Pantasia Manufacturing Corp.*, 956 F.Supp. 73, 77 (D.P.R.1997). It is at this juncture that most of the ADEA and Title VII cases which do not withstand summary judgment are decided.

■ To prevail at this stage, a plaintiff must proffer sufficient direct or circumstantial evidence to lead a reasonable fact finder to conclude that the employer's de-

cision was motivated by discriminatory animus. *Pages–Cahue*, 82 F.3d at 537. This is not always an easy task. Thus, in *Pages–Cahue*, the Court rejected plaintiffs' arguments that anti-age animus could be inferred from the fact that the employees were not offered alternative employment opportunities; it held that such a finding would require the court to encroach too far into areas which should be left to the company's legitimate management. *Id.* at 538.

The determination of what constitutes enough evidence of pretext and/or discriminatory animus is generally made on a case-by-case basis. Yet most courts seem to agree that, at least in the absence of "smoking gun" evidence, more than one vague instance of discrimination is required. In *Mulero–Rodríguez*, 98 F.3d at 674, for instance, the First Circuit reversed a district court's finding that plaintiff's evidence merely reflected differences of opinion between plaintiff and defendant and, reading all inferences in plaintiff's favor, found that the record offered sufficient evidence of discriminatory animus. But in that case, plaintiff had proffered evidence of defendant's comments that "he was too old to handle the salespeople," and that he was going to be relieved of his supervisory duties over the sales force. Although the Circuit Court agreed that standing alone, that statement was too remote to be linked with the decision to terminate plaintiff, it concluded that plaintiff had succeeded in creating a nexus between that statement and the decision to terminate him. In doing so, the Court made reference to *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597–98 (1st Cir.1987), where the First Circuit held that "an employer's willingness to consider impermissible factors such as ... age ... while engaging in one set of presumably neutral employment decisions ... might tend to support an inference that such

impermissible considerations may have entered into another area of ostensibly neutral employment decisions—here, an employee's termination." *Mulero–Rodríguez*, 98 F.3d at 676.

Similarly, in *Maldonado–Maldonado*, 956 F.Supp. at 77, plaintiff furnished the Court with a number of affidavits sworn by present and former employees which uniformly indicated that plaintiff's boss had stated on various occasions that he was planning to "get rid of older employees to create a new team consonant with his ways." *Id.* at 79. Plaintiff also provided evidence that defendant had provided inconsistent explanations for his discharge. The district court thus decided that, given these facts, a reasonable jury could find that defendant's stated reason for dismissing plaintiff was pretextual, and that a discriminatory animus did exist.

In *Irizarry v. Fortuño*, 1997 WL 266981 (S.D.N.Y.1997), however, the district court stated that the fact that the defendant was known as "the Terminator" in his last job and regarded his mission as the "rejuvenation" and "reinvigoration" of the agency was insufficient in and of itself to infer a discriminatory animus. "Such isolated and ambiguous remarks," it held, "are simply insufficient to establish an inference of age discrimination." *Id.*, citing *Beers v. NYNEX Material Enterprises Co.*, 1992 WL 8299, *10, 1992 U.S.Dist. LEXIS 240, at *9 (S.D.N.Y.1992).

■ In the end, ADEA and Title VII cases are usually decided on the basis of whether the plaintiff manages to comply with the standard for defeating summary judgment. As the *Irizarry* case suggests, courts will not accept mere "gauzy generalities, unsupported conclusions, subjective characterizations and problematic suppositions" as a foundation to an opposition for summary judgment. *The Dartmouth Re-*

*view v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). A plaintiff will be required to provide "specific instances of unlawful discrimination." *Id.*

Before we go on to apply the facts of this case to the legal framework just described, we must point out a special circumstance that arises in this case regarding the position the Court is in with respect to the factual assertions made by the parties. In this particular case, Defendants assert that Plaintiffs' opposition to the summary judgment motion is not only substantively flawed, but also procedurally defective because it fails to comply with the so-called "anti-ferret rule;" that is, it does not present a concise statement of material facts as to which there is a genuine issue to be tried, as required by Local Rule 311.12.[1]

■ This Court has previously expressed that "[w]hen a party opposing a motion for summary judgment fails to comply with [said] 'anti-ferret rule,' the statement of material facts filed by the party seeking summary judgment [shall be] deemed ... admitted." *Méndez Marrero v. Toledo*, 968 F.Supp. 27 (D.P.R. 1997), *referring to Domínguez v. Eli Lilly & Co.*, 958 F.Supp. 721, 727 (D.P.R.1997). *See also Tavarez v. Champion Products, Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995). Otherwise, the Court would be forced to search "through the entire record for evidence of genuine issues of material fact which might preclude the entry of summary judgment." *Méndez Marrero*, 968

F.Supp. at 34, *referring to Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930–31 (1st Cir.1983). Although the non-movant's failure to provide a statement of uncontested material facts does not automatically warrant the granting of summary judgment, "it launches the non-movant's case down the road towards an easy dismissal." *Id.*

■ Such is the scenario in the present case. As Defendants assert, Plaintiffs' opposition violates the anti-ferret rule. Plaintiffs have failed to file a "separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," as required by the rule. Local Rule 311.12. Plaintiffs have only included a short section in their opposition in which they admit almost all of the facts in Defendants' statement of undisputed facts. Only a few of these facts are laconically rejected by Plaintiffs, or not admitted for lack of information. No specific references to the record are made by Plaintiffs, and no affidavits or other evidence were presented to contradict those sworn statements accompanying Defendants' motion. Accordingly, all material facts set forth in Defendant's statement of undisputed material facts shall be deemed admitted. *Rivas v. Federacion de Asociaciones Pecuarias*, 929 F.2d 814, 816 n. 2 (1st Cir.1991); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 19 (1st Cir.1989). Even were we not to apply the "anti-ferret rule," the result would be the same, since Defen-

1. Local Rule 311.12 provides that:
 [u]pon any motion for summary judgment, there shall be served and filed annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record. All material facts set forth in the

statement required to be served by the moving party shall be deemed to be admitted unless controverted by the statement required to be served by the opposing party. The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record.

dants' affidavits are opposed only by Plaintiff's conclusory, unsupported and bare allegations that he was fired because of his age and national origin. Not even in Plaintiffs' legal argument are specific references to any evidence on the record made, which could support such allegations. Thus, we need only examine whether given the facts, as described by Defendants, the movant is entitled to judgment as a matter of law.

 Defendants first argue that Plaintiffs have failed to establish their *prima facie* case under *McDonnell*, because they meet neither the second nor the fourth prongs of the test. First, Defendants argue that Plaintiff was not qualified for either of the two positions for which he applied. To this effect, they have produced affidavits from the two persons in charge of hiring for these two positions. In both cases, the affidavits state that Plaintiff was not hired because he did not have the required experience for the job.

The "Coordinator II, Documentation" position required at least one year of experience with international transportation documentation, preferably in import. Defendants' uncontradicted affidavits state that Plaintiff did not have the required one year of experience in this field. The "Supervisor, Stevedoring" position required an ability to supervise **all areas** regarding terminal operations. Again, Defendants' uncontradicted affidavits state that while Plaintiff had knowledge in **some areas** of terminal operations, he was not qualified to supervise all areas of such an operation.

Perhaps even more convincing is the Plaintiffs' failure to meet the requirements of the fourth prong of the *McDonnell* test. Said test requires, as previously discussed, that the position for which Plaintiff was rejected remain open, and that candidates with the same qualifications as Plaintiff continue to be considered for the position.

Defendants have, once again, presented uncontradicted affidavits which state that these two positions were filled shortly after Plaintiff was considered with two persons who were much more qualified than him.

For the first position, CAT hired Ms. Maryanne Macknin. Not only was Macknin older than Plaintiff at the time (she was 50 years old), but she also had approximately fifteen (15) years of experience in documentation for imports and exports, the essential requirement for the position which Plaintiff lacked.

On the other hand, CAT hired Mr. Thomas Bouchelle for the position of "Supervisor, Stevedoring." Bouchelle was only about three years younger than Plaintiff. In addition, the record shows that he had performed the duties of that same position before. Therefore, he was more qualified for it than Plaintiff. He already had the required experience supervising all areas of terminal operations, since he had performed the functions in the exact same position.

Taking into account the uncontradicted affidavits filed by Defendants with their motion, the Court must conclude that Plaintiff has failed to meet the second and fourth prongs of the *McDonnell* test. Plaintiff has not established a *prima facie* case of discrimination, and his claim cannot survive summary judgment.

 However, even were we to consider the unsupported bald assertions made by Plaintiff in his Complaint and Opposition as sufficient to contradict the sworn statements presented by Defendants, at this first stage of the *McDonnell* test, the Court understands that Plaintiff fails in the second stage of the test. Defendants have introduced a legitimate reason to justify their hiring choices. According to the affidavits, the two people hired for the jobs

were much more qualified for the positions than Plaintiff. Hence, the burden has been shifted back to Plaintiff to prove that this reason is a mere pretext to hide the discriminatory animus.

Plaintiff Hernández was considered for the two positions for which he applied. In Port Everglade, he was interviewed by Ms. Armellini and Ms. Yunta, both Hispanic women over 40 years of age. A team composed of four Hispanic women, three (3) of which were over forty (40) years old, determined that he did not meet the requirements of the position. Moreover, the person hired, Ms. Macknin was older than Plaintiff and was better qualified.

In Jacksonville, Plaintiff was considered for the "Supervisor, Stevedoring Position." However, after reviewing his qualifications, Ms. Burch, who was also over 40 years of age, decides that he did not meet the requirements for the position. The person hired, Mr. Bouchelle, who was 45 years old, had performed the functions of the job and had previous supervisory experience.

Plaintiff has not presented any evidence, other than mere speculation, to demonstrate discriminatory intent by CAT. He has no evidence to support his allegations of age and national origin discrimination. *See* **Docket # 30**, Exhibit 1, pp. 136–137, 152–153, 163, 179–180, 198–199. The only basis Plaintiff has to claim that the "Coordinator II, Documentation" position was not given to him because of his age and national origin, is the fact that CAT hired a white female who was younger than him (only three years younger). *See* **Docket # 30,** Exhibit 1, pp. 136–137, 152. Plaintiff also stated that he believed he had been rejected because of his national origin, since he only saw one Puerto Rican, Zoraida Jirau, in the Port Everglades office. *See* **Docket # 30**, Exhibit 1, pp. 152–153. Aside from Plaintiff's subjective percep-

tion, the record lacks support for his claims.

Although Macknin is a caucasian female, she was older than Plaintiff and was more qualified than him for the position. Moreover, the department he was applying to was composed of 70% Hispanics and 70% Persons over 40 years of age, according to the uncontradicted evidence presented by Defendants. Furthermore, the persons who interviewed Plaintiff and reviewed his qualifications were all Hispanics and 75% of them were in the protected age group.

Regarding the "Supervisor, Stevedoring" position, Plaintiff admitted having no evidence to support his claim of age and national origin discrimination. *See* **Docket # 30**, Exhibit 1, pp. 152:14–19, 163, 179:11–180:11. He also admitted that no jokes relating to his age or national origin were ever directed at him. *Id.* at pp. 163.

Plaintiffs' allegations are only based on his subjective belief that he was discriminated against. In *Santiago v. Canon USA. Inc.,* 138 F.3d 1 (1st Cir.1998), the First Circuit held that a plaintiff's subjective belief that he suffered an adverse employment action as a result of discrimination is not enough to withstand a motion for summary judgment. Simply stated, the record is fully devoid of any more evidence of discrimination. Therefore, absent any direct or circumstantial evidence other than Plaintiff's subjective belief that he was discriminated against, Defendants are entitled to summary judgment in their favor. Plaintiffs's claims under ADEA and Title VII will be **DISMISSED WITH PREJUDICE.**

**Plaintiffs' Claim Against CES—Probationary Period**

█ In the Complaint, Plaintiff also alleges that CES discriminated against him when it placed him on a 45–day probationary period when he was hired by CES. He

alleges that since he was terminated from CTT because they ceased operations, he should have been received in CES as a full time employee with no probationary period. This claim, however is time-barred since Plaintiff failed to exhaust the applicable administrative procedures with respect to this claim.

A discrimination charge must be filed before the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurs, or within 300 days if the person has initially instituted proceedings with an authorized State or local agency. 42 U.S.C. § 2000e–5(e).

 A discrimination claimant is required to make such a filing, which "while obligatory, is not jurisdictional ... [r]ather, it is more akin to a statute of limitations." *Bonilla v. Muebles J.J. Alvarez. Inc.*, 194 F.3d 275 (1st Cir.1999), *citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). "This relatively short limitation period serves important interests. 'The Limitations period[ ], while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect[s] employers from the burden of defending claims arising from employment decisions that are long past.' *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)." *Thomas v. Eastman Kodak Company*, 183 F.3d 38 (1st Cir.1999).

The charge that serves as basis for the Complaint of caption was filed on October 29, 1998, more than 575 days after Plaintiff was hired by CES. Plaintiff failed to file a charge before the EEOC, or the competent Commonwealth agency within the prescribed period. Therefore, his discrimination claim against CES is time barred and will be **DISMISSED WITH PREJUDICE.**

**Plaintiffs' claims under the United States Constitution and the Executive Order**

Plaintiff has failed to articulate a claim under the Constitution of the United States. It was not pleaded with any specificity in the Complaint, and Plaintiff has failed to produce any evidence to support such a claim. Hence, absent any evidence, specific allegations or argumentation to support this claim, it will be **DISMISSED WITH PREJUDICE.**

A contractor of the federal government faces several legal requirements under Federal Executive Order No. 11246. A federal contractor cannot discriminate in employment and must take affirmative action with respect to certain protected categories (sex, national origin, race and veteran status). The Secretary of Labor, through the Office of Federal Contract Compliance Programs (OFCCP), administers and enforces the aforementioned laws.

 The enforcement of these laws rests with the government. Therefore, the protected individual does not have a direct cause of action against the employer who is a federal contractor. *Tolliver v. Xerox Corp.*, 918 F.2d, 1052, 1056 (2nd Cir.1990); *Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C.Cir.1990). In light of this, we must conclude that Plaintiff lacks a private cause of action against the defendants under Federal Executive Order No. 11246. As such, this claim will also be **DISMISSED WITH PREJUDICE.**

**Plaintiffs' Supplemental Claims—Law No. 100 and Article 1802**

 As to the pending pendent jurisdiction claims in the present case, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a

common nucleus of operative facts. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

█ It has been stated that the holding in *Gibbs* "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.*, 727 F.Supp. 701, 709 (D.Me.1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991).

█ Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs*, 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado–Garcia v. Ponce Federal Bank*, 979 F.2d 890, 896 (1st Cir.1992); *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990); *cf. Vega v. Kodak Caribbean*, 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

█ Supplemental jurisdiction should be declined in this case in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon*, 484 U.S. at 350 n. 5, 108 S.Ct. 614, citing *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Since Plaintiffs are not entitled to any award under the ADA, the only award Plaintiffs could, in any event, pursue would be under the commonwealth statutes. Therefore, Plaintiffs' claims under the laws and the Constitution of the Commonwealth of Puerto Rico are **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For the reasons stated above, Plaintiffs' claims under ADEA, Title VII, Federal Executive Order No. 11246, and the Constitution of the United States are hereby **DISMISSED WITH PREJUDICE.** Plaintiffs' claims under Law No. 100 and Article 1802 are **DISMISSED WITHOUT PREJUDICE.** Judgment will be entered accordingly.

**SO ORDERED.**